IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                              )<br>)<br>KENNETH D. PHELPS III,           )<br>)<br>)<br>Defendant.                             )<br>)<br>_____ ) | Criminal No.<br><br>COUNTS ONE<br>THROUGH TWELVE:   18 U.S.C. § 1343<br>                                          (Wire Fraud)<br>COUNTS THIRTEEN<br>THROUGH TWENTY-FOUR: 18 U.S.C. § 1001<br>                                          (False Statements) |

## INDICTMENT

The Grand Jury charges that:

### COUNTS ONE THROUGH TWELVE
### WIRE FRAUD
### (18 U.S.C. § 1343)

#### General Allegations

At all times material to this Indictment:

1.  Lockheed Martin Corporation ("Lockheed") was a publicly-traded corporation that had offices and operations in multiple states, including an office at 1550 Crystal Drive, Arlington, Virginia.

2.  Lockheed Martin Employees' Political Action Committee ("Lockheed PAC") was a political action committee registered with the Federal Election Commission. Generally, Lockheed PAC's function was to receive voluntary contributions from employees of Lockheed, and to use those funds to make contributions to candidates for federal and state elected offices. Lockheed PAC was managed from the offices of Lockheed located at 1550 Crystal Drive, Arlington, Virginia.

3. KENNETH D. PHELPS III (hereinafter "PHELPS") was the deputy manager for Lockheed PAC, and also served as the Treasurer for Lockheed PAC. PHELPS' duties in that position included, among other things, preparing contribution checks for distribution to federal and state candidates, keeping track of disbursements and receipts within Lockheed PAC's computer system, and making periodic required filings with the Federal Election Commission on Lockheed PAC's behalf.

4. The Federal Election Commission ("FEC") was the agency of the United States that was responsible for administering and enforcing the Federal Elections Campaign Act ("FECA"). The FEC was also responsible for providing accurate information to the public about the amounts and sources of campaign contributions.

5. Under the provisions of the FECA, Lockheed PAC was required to file periodic reports with the FEC identifying each person who made a contribution during the reporting period whose contribution or contributions for that calendar year aggregated over $200. Lockheed PAC was also required to identify each of its contributions during the reporting period whose contribution or contributions for that calendar year aggregated over $200.

6. From approximately in or about January 2002, to on or about December 5, 2003, PHELPS wrote checks totaling approximately $160,000 from Lockheed PAC payable to himself, and then cashed and deposited those checks for his own personal use.

### The Scheme and Artifice and Its Purpose

7. From in or about January 2002, and continuing to on or about December 5, 2003, PHELPS devised and intended to devise a scheme and artifice to defraud Lockheed PAC of money and property held by Lockheed PAC. The purpose of the scheme and artifice was to obtain personal financial enrichment for PHELPS by defrauding Lockheed PAC of money held

by Lockheed PAC in Lockheed PAC's bank account.

## Manner and Means

8.   Defendant PHELPS carried out the scheme and artifice in the following ways, among others:

9.   It was a part of the scheme and artifice that PHELPS took checks from the Lockheed PAC checking account and, instead of writing the checks to federal political candidates, wrote checks to himself. PHELPS then forged the signatures of two Lockheed PAC executives, endorsed the checks to himself, and deposited the checks into PHELPS' personal bank account for PHELPS' personal use.

10.  It was a further part of the scheme and artifice that, in order to evade detection of his theft, PHELPS concealed the existence of these payments from other individuals employed at Lockheed PAC by writing checks to himself in amounts commonly associated with federal political contributions made by Lockheed PAC – $500 or $1,000 – and by subsequently altering the computer system at Lockheed PAC to change the payee information concerning each check that PHELPS wrote himself. As a result, although particular checks were in fact written to, and cashed by, PHELPS, PHELPS changed the Lockheed PAC's computer records to make it appear that each of those checks had instead been written to a federal political candidate or campaign.

11.  For instance, on or about March 15, 2002, PHELPS wrote Lockheed PAC Check Number 8608 to himself in the amount of $1,000. Thereafter, PHELPS manually changed the Lockheed PAC computer system to make it appear that Check Number 8608 had instead been written to the federal campaign of a candidate in the amount of $1,000.

12.  It was a further part of the scheme and artifice that, in order to evade detection of his theft, PHELPS concealed the existence of these payments from the FEC. Lockheed PAC was

required to make periodic reports to the FEC concerning each and every contribution made to a federal political candidate or campaign by, or on behalf of, Lockheed PAC. Lockheed PAC made these transmissions to the FEC by electronic wire transmission from Lockheed PAC's offices in Arlington, Virginia, to the FEC in Washington, District of Columbia. In order to maintain the appearance that the payments to himself were in fact federal political contributions, PHELPS caused Lockheed PAC to transmit to the FEC the false information concerning those checks. PHELPS made and caused these periodic FEC filings until June 30, 2003, at which point he stopped making Lockheed's required periodic filings to the FEC.

13. Pursuant to this scheme and artifice, from in or about January 2002 to on or about December 5, 2003, PHELPS wrote himself more than 130 checks, each of which he cashed for his personal use, and each of which he fraudulently reflected in Lockheed PAC's FEC filings as instead being checks to federal political candidates or campaigns. The amount of these checks totaled approximately $160,000.

## The Wire Transmissions

14. On or about each date set forth below, PHELPS, for the purpose of executing, and attempting to execute, the scheme and artifice, did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, that is, electronic transmissions of Lockheed PAC's FEC filings from PHELPS' office in Arlington, Virginia, to the FEC's offices in Washington, District of Columbia:

| Count | Date of Wire Transmission | Period of Time Covered |
|---|---|---|
| 1 | April 20, 2002 | March 1-31, 2002 |
| 2 | May 20, 2002 | April 1-30, 2002 |
| 3 | June 17, 2002 | May 1-31, 2002 |

| 4 | July 20, 2002 | June 1-30, 2002 |
| 5 | August 21, 2002 | July 1-31, 2002 |
| 6 | September 20, 2002 | August 1-31, 2002 |
| 7 | October 19, 2002 | September 1-30, 2002 |
| 8 | October 24, 2002 | October 1-16, 2002 |
| 9 | December 5, 2002 | October 17-November 25, 2002 |
| 10 | January 31, 2003 | November 26-December 31, 2002 |
| 11 | April 18, 2003 | January 1-March 31, 2003 |
| 12 | July 21, 2003 | April 1-June 30, 2003 |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS THIRTEEN THROUGH TWENTY-FOUR
### (False Statements)
### 18 U.S.C. § 1001

15. Paragraphs 1 to 6 and 9 to 13 are realleged as if fully set forth herein.

16. Beginning on or about April 20, 2002, and continuing until in or about December 24, 2003, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Federal Election Commission, defendant PHELPS knowingly and willfully made and caused to be made material false, fictitious, and fraudulent statements and representations, namely, defendant PHELPS stated in required periodic filings with the FEC for Lockheed PAC, as set forth below, that particular checks were written to a federal political candidate or campaign when, in fact, they were written to, and cashed by, PHELPS for his personal use:

| Count | Date of False Statement Made or Caused | Period of Time Covered |
|---|---|---|
| 13 | April 20, 2002 | March 1-31, 2002 |

| | | |
|---|---|---|
| 14 | May 20, 2002 | April 1-30, 2002 |
| 15 | June 17, 2002 | May 1-31, 2002 |
| 16 | July 20, 2002 | June 1-30, 2002 |
| 17 | August 21, 2002 | July 1-31, 2002 |
| 18 | September 20, 2002 | August 1-31, 2002 |
| 19 | October 19, 2002 | September 1-30, 2002 |
| 20 | October 24, 2002 | October 1-16, 2002 |
| 21 | December 5, 2002 | October 17-November 25, 2002 |
| 22 | January 31, 2003 | November 26-December 31, 2002 |
| 23 | April 18, 2003 | January 1-March 31, 2003 |
| 24 | July 21, 2003 | April 1-June 30, 2003 |

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL.

_____
   Foreperson

                              WILLIAM M. WELCH II
                              Chief
                              Public Integrity Section

By: _____
     NICHOLAS A. MARSH
     SHAUN M. PALMER
     Trial Attorneys
     Public Integrity Section
     Criminal Division
     U.S. Department of Justice
     1400 New York Avenue, NW
     The Bond Building – 12th Floor
     Washington, DC  20005
     T: 202-514-1412 / F: 202-514-3003