IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 07-102 |
| | ) | |
| KENNETH D. PHELPS III, | ) | COUNTS ONE |
| | ) |   THROUGH TWELVE:   18 U.S.C. § 1343 |
| | ) |                            (Wire Fraud) |
| Defendant. | ) | COUNTS THIRTEEN |
| | ) |   THROUGH TWENTY-FOUR: 18 U.S.C. § 1001 |
| _____ | ) |                            (False Statements) |

**SENTENCING MEMORANDUM**

The United States of America, by and through undersigned counsel, hereby submits its Sentencing Memorandum in connection with the above-captioned matter. As set forth below, the United States submits that the defendant, Kenneth D. Phelps III, should receive a period of incarceration of 24 months, which is a sentence that falls within the applicable range of the advisory United States Sentencing Guidelines. The United States further requests that the Court order restitution, special assessments, and supervised release as required by law.

**I. Background of Relevant Parties and Entities**

Lockheed Martin Corporation is a publicly-traded corporation with offices in, among other jurisdictions, Arlington, Virginia. Lockheed Martin has an associated political action committee ("PAC") to which its employees can make voluntary contributions. The Lockheed Martin Employees' Political Action Committee ("Lockheed PAC") is operated from Lockheed Martin's Arlington, Virginia, location. At all times relevant to the charges in the Indictment, defendant Kenneth Phelps III (hereinafter "Phelps") was employed by Lockheed PAC as its deputy manager and treasurer. Phelps ceased to be a Lockheed PAC employee as of December

23, 2003, upon Lockheed PAC's discovery of the scheme set forth herein.

## II.     The Criminal Scheme

Phelps used his position at Lockheed PAC to engage in massive, wide-scale embezzlement of funds obtained by Lockheed PAC. Phelps' duties involved preparing checks to be sent to federal candidates, recording those contributions in Lockheed PAC's computer system, and making required periodic filings to the FEC concerning Lockheed PAC's federal contributions. At the time, Lockheed PAC had no formal auditing process for its accounts, so Phelps was in charge of reconciling the accounts as well. Phelps, however, did not have signatory authority on the checks from the Lockheed PAC's account.

Beginning in roughly January 2002, Phelps started stealing checks from Lockheed PAC's bank account, writing the checks to himself, and forging the signatures of two more senior Lockheed PAC officials (who each had signatory authority). Phelps then took the checks to Phelps' bank, deposited them in his account, and converted the money to his personal use. From approximately January 2002 until the scheme's discovery in late December 2003, Phelps wrote himself more than 135 checks and stole more than $170,000.

In order to conceal the scheme, Phelps altered Lockheed PAC's computer system to make it appear that each stolen check was instead a contribution to a federal candidate or campaign. Phelps took the additional step of writing the checks to himself in amounts consistent with those types of contributions – generally, $500 or $1,000.

Phelps, however, faced an additional hurdle in his embezzlement scheme: the Federal Election Commission ("FEC"). As a federal PAC, Lockheed PAC was required to make periodic filings with the FEC that set forth an accurate listing of disbursements from its accounts. In

order for Phelps to evade detection, he took the Lockheed PAC computer records that he altered – with the forged contribution information – and used those false records to make Lockheed PAC's FEC filings. These transmissions were made electronically, through the use of interstate wire transmissions from Virginia to the District of Columbia.

In December 2003, Phelps' superiors uncovered the existence of the scheme. Phelps was placed on leave pending an investigation. In February 2004, Phelps and his attorney met with four Lockheed Martin executives. Phelps confessed to the embezzlement scheme and the fraudulent wire transmissions to the FEC, and provided a handwritten accounting (based on his records and memory) of the money he embezzled.

### III.    A Sentence Within the Advisory Guideline Range is Warranted.

The United States submits that Phelps' conduct supports a sentence of incarceration within the range of the applicable advisory range of the United States Sentencing Guidelines. The impact of Phelps' conduct was far greater than the amount of the money he embezzled. Phelps stole money that was collected for the purpose of making political contributions on behalf of Lockheed Martin's employees. By taking money designated for legitimate activity protected by the First Amendment, and by covering up the theft by making repeated false statements to the FEC, Phelps affected multiple layers of the political and electoral process.

First, there can be no dispute that the circumstances of Phelps' embezzlement scheme were serious. Over the span of two years, Phelps systematically and continuously took from his employer, with a total theft amount of greater than $170,000. From a monetary perspective, the sheer dollar value of Phelps' crime is both significant and disturbing. Moreover, in order to hide these fraudulent transactions and to permit additional ones, Phelps constructed a rather elaborate

concealment scheme. The scheme involved Phelps forging the names of other Lockheed PAC employees, and required Phelps to make multiple layers of false computer entries into databases that Phelps controlled and managed. The total amount of the embezzlement scheme, coupled with the planning and subterfuge needed to pull it off, indicate that Phelps committed a serious crime.

Second, it is important to note that Phelps stole money from a political action committee – an organization designed to take contributions from the rank-and-file Lockheed employees and to use those monies to make larger contributions to candidates for federal elected office. By embezzling funds from Lockheed PAC, Phelps deprived Lockheed PAC and its contributors of the ability to utilize as much as $170,000 for federal political contributions. Furthermore, because Lockheed PAC's records showed that the PAC had made contributions to certain federal candidates, Lockheed PAC and its contributors had no idea that their funds were, in fact, <u>not</u> going to those candidates. It is well-settled that lawful campaign contributions have been considered a protected form of free speech under the First Amendment. <u>See</u>, <u>e.g.</u>, <u>Buckley v. Valeo</u>, 424 U.S. 1, 14-23 (1976). Phelps' embezzlement scheme prevented Lockheed PAC – and, transitively, the individuals who contributed to Lockheed PAC – from being able to provide lawful monetary contributions to the campaigns of the group's choice. Thus, Phelps' embezzlement scheme had a harm far greater than the monetary impact on Lockheed PAC's bank account; in actuality, the embezzlement interfered with the very political activities for which Lockheed PAC was created.

Third, Phelps' embezzlement caused the repeated submission of multiple false entries and records to the FEC. The FEC is responsible for administering and enforcing the Federal

Elections Campaign Act ("FECA"), and for providing accurate information to the public about the amounts and sources of campaign contributions.  Under the provisions of the FECA, Lockheed PAC was required to file periodic reports with the FEC identifying each person who made a contribution during the reporting period whose contribution or contributions for that calendar year aggregated over $200.  Lockheed PAC was also required to identify each of its contributions during the reporting period whose contribution or contributions for that calendar year aggregated over $200.  Through Phelps' scheme, the FEC received hundreds of false entries and records.  As a result, the FEC was caused to report – both to campaigns and to the public at large – the existence of hundreds of political contributions by Lockheed PAC that, in fact, never existed.  Given that one of the primary roles of the FEC is the dissemination of accurate campaign contribution data to the public, the false data submitted by Phelps as a cover-up to his theft directly impacted the FEC's ability to achieve its mission.

      The United States acknowledges that Mr. Phelps has faced challenges in his life – perhaps none greater than the personal and familial disruption that was occurring in Phelps' life at or around the time that Phelps committed these crimes.  But the circumstances that affected Phelps were simply no excuse for Phelps stealing more than $170,000 from the Lockheed PAC, or for Phelps causing the transmission of hundreds of false entries to the Federal Election Commission ("FEC").  As a result, the United States believes that Phelps should be sentenced to a period of incarceration within the advisory Guideline range applicable to the Final Offense Level adopted by the Court followed by the maximum period of three years supervised release for each count of conviction.

**IV.     Restitution and Mandatory Special Assessment**

The United States respectfully submits that an order of full restitution is appropriate in this case and, indeed, mandated by 18 U.S.C. § 3663A, as Phelps should be held responsible for repayment of the entire financial loss caused by his criminal conduct.  Lockheed Martin representatives have determined that Phelps stole $170,230.91 from Lockheed PAC of which Phelps repaid $7,115.38 from his forfeited annual leave earnings.  The remaining loss amount of $163,115.53 was repaid by Lockheed Martin's insurance carrier, Travelers Insurance, after Lockheed PAC paid its $5,000 deductible.  Thus, Phelps owes restitution to Lockheed Martin in the amount of $5,000 and to Travelers Insurance in the amount $163,115.53.

Finally, Phelps' sentence should also include a mandatory special assessment of $2,400, which reflects the requisite $100 for each of the 24 counts of conviction.

**V.     Conclusion**

The United States stands ready to address the foregoing issues at sentencing and respectfully submits this memorandum as an aid to the Court.

>                              WILLIAM M. WELCH II
>                              Chief, Public Integrity Section
>
> By:    s/Shaun M. Palmer
>        NICHOLAS A. MARSH
>        SHAUN M. PALMER
>        Trial Attorneys
>        Public Integrity Section
>        Criminal Division
>        U.S. Department of Justice
>        1400 New York Avenue, NW
>        The Bond Building – 12th Floor
>        Washington, DC  20005
>        T: 202-514-1412 / F: 202-514-3003

**CERTIFICATE OF SERVICE**

      I hereby certify on this 18th day of October 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

G. Allen Dale
Law Offices of G. Allen Dale, P.C.
601 Pennsylvania Avenue, NW
Suite 900, North Building
Washington, DC  20004


                                      RESPECTFULLY SUBMITTED,

                                      WILLIAM M. WELCH II
                                      Chief, Public Integrity Section

By:    s/Shaun M. Palmer
         NICHOLAS A. MARSH
         SHAUN M. PALMER
         Trial Attorneys
         Public Integrity Section
         Criminal Division
         U.S. Department of Justice
         1400 New York Avenue, NW
         The Bond Building – 12th Floor
         Washington, DC  20005
         T: 202-514-1412 / F: 202-514-3003